UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES B. YOAKUM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION H-10-00278 |
| v. | § | |
| | § | |
| PBK ARCHITECTS, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant PBK Architects, Inc.'s motion for summary judgment (Dkt. 14) and plaintiff James B. Yoakum's motion for conditional certification of an FLSA collective action and notice to potential class members (Dkt. 16). After review of the motions, the various responses, and the applicable law, the court is of the opinion that both motions should be DENIED.

**I. BACKGROUND**

Plaintiff James B. Yoakum was a construction services representative[1] ("CSR") for Defendant PBK Architects, Inc. ("PBK"). Yoakum claims that he regularly worked more than 40 hours a week, yet he did not receive overtime pay. Dkt. 16. He also claims that there are other similarly situated CSRs that likewise did not receive overtime pay to which they were entitled. *Id.* PBK claims that neither Yoakum nor the other CSRs are entitled to overtime pay because the CSRs who work for PBK are exempt from the Fair Labor Standards Act ("FLSA") overtime requirements pursuant to the administrative exemption. Dkt. 14. Additionally, PBK claims that the job duties of CSRs vary from person to person, so class treatment is inappropriate. Dkt. 19.

---

[1] Yoakum claims that his title during his tenure at PBK varied, though he always held the same position. According to Yoakum, his position had been referred to as a "field representative," "construction services representative," "quality control representative," and "construction administrator." Dkt. 15 & n.2.

### A. *Yoakum's Duties*

According to PBK, Yoakum was the "on-site representative and proxy for the architects and PBK and for PBK's clients, the owners of the construction sites." Dkt. 14. Yoakum explains his position as being the on-site "'eyes and ears' for the architect." *Id.* at 3 (quoting Yoakum Dep. 31:22-32:1). Yoakum generally had more than one site for which he was responsible, and he traveled from site to site. Yoakum's supervisor, Greg Ferguson, testified that Yoakum oversaw the construction at the job sites he visited, which "required him to exercise discretion and independent judgment 'every day he [was] on the job.'" *Id.* (quoting Ferguson Dep. 107:4-19). Yoakum assessed contractors' work, informed the construction superintendent if he discovered any problems, and ensured that the superintendent fixed the problems. *Id.* (citing Ferguson Dep. 104-105). If the construction superintendent failed to fix problems that Yoakum identified, Yoakum would inform the building owner or his supervisor at PBK. Dkt. 14-3 at 104:20-22; Dkt. 15 at 9.

Yoakum did not have an office at PBK, but he had an office at each construction site that he oversaw. Yoakum was involved in the pay process for the contractors; he and the building owner approved the pay applications and then sent them to the architect for final approval. Dkt. 14-1 63:3 - 64:3; Dkt. 15 at 9. Yoakum advised contractors when they needed to add additional employees on a job and evaluated the contractors' purchasing decisions. Dkt. 14. He could not, however, order a work stoppage or fire employees. Dkt. 15. Thus, if his recommendations were not followed, his only recourse was to advise the owner or his supervisor at PBK. Dkt. 15. Both parties agree that Yoakum "observed and reported, but did not inspect." Dkts. 15, 18.

### B.    *CSR's Duties*

Yoakum claims that all CSRs had the same basic duties and responsibilities. Dkt. 16. William Matthew Murphy, a recently terminated CSR for PBK who has signed a consent to opt in

to the collective action, should it be certified, provided a declaration that lists his duties as a CSR; these are essentially the same as the duties set forth in Yoakum's declaration. *Compare* Dkt. 16, Exh. 1, *with* Dkt. 22, Exh. 30. Murphy noted that, based on conversations with Yoakum and three other CSRs, he believes that the work performed by the CSRs with whom he has spoken was essentially the same, that they all consistently worked more than 40 hours per week, and that none of them was paid overtime.[2] Dkt. 22, Exh. 30. Yoakum's supervisor, Ferguson, testified during his deposition that the CSRs all do the same type of work and that none of them is paid overtime. Dkt. 16, Exh. 4, at 23. Ferguson's declaration, which is attached to PBK's response, indicates that CSRs are, in general, required to oversee the construction site on behalf of the owner of the site. Dkt. 19, Exh. B. Their basic duties include instructing contractors to staff more employees and correct unsuitable work, approving pay applications from contractors, which are later submitted to the architect for final approval, telling the contractor to stop work if necessary, and keeping the owner informed about what is happening at the construction site. Dkt. 19, Exh. B; Dkt. 16, Exh. 4 at 28-31. When Ferguson trains new CSRs, he tells them that they "have authority . . . to do whatever they think is necessary to ensure that the client's project is completed correctly and on time." Dkt. 19, Exh. B.

PBK claims that the CSRs all have to exercise discretion and independent judgment every day they were on the job, but that each CSR's duties vary depending on the client and the project. Dkt. 19, Exh. B. PBK attached declarations from seven different CSRs to its response, each of which contain slightly different descriptions of the declarant's duties. *See* Dkt. 19, Exhs. C-I.

---

[2] PBK objects to the use of Murphy's declaration because Yoakum did not disclose Murphy as a person who would support his claims or defenses in his Rule 26 disclosures. However, since Yoakum's counsel did not know about Murphy until very recently, the absence of Murphy's name on the Rule 26 disclosures is substantially justified. *See* Fed. R. Civ. P. 37(c).

Yoakum asserts that these declarations are not admissible as evidence to support PBK's opposition to his motion to conditionally certify the class because PBK did not disclose the declarants as individuals supportive of its defenses in its Rule 26 disclosure statement.

## ANALYSIS

### A. Summary Judgment

PBK moves for summary judgment, claiming that Yoakum was an exempt administrative employee and that it therefore was not required to pay him for overtime hours. Yoakum argues that summary judgment is premature because discovery has been limited to pre-certification issues and the parties therefore have not engaged in merits-based discovery. Dkt. 21. On April 16, 2010, the parties submitted a "Joint Discovery Case Management Plan" in which the parties clearly stated that "pre-certification discovery reasonably can be completed by September 12, 2010" and that further discovery may be necessary thereafter. Dkt. 9. The court issued a scheduling order on May 11, 2010 in which it ordered that "pre-certification discovery" should be completed by September 12, 2010, that the motion for certification must be filed by September 12, 2010, and that the court would issue a new scheduling order containing deadlines for, among other things, filing of dispositive motions, after ruling on the motion for certification. Dkt. 10. Yoakum states that there "is nothing in this Court's Scheduling Order which indicates that the parties were to engage in merits-based discovery or were permitted to file motions for summary judgment on merits-based exemptions." Dkt. 21. Thus, Yoakum advocates for the court to "proceed to address the motion for conditional certification and rule that motions for summary judgment must be filed after completion of discovery and as part of the second stage of the *Lusardi* approach to FLSA collective actions." Dkt. 18.

PBK argues that there is nothing preventing the court from granting a motion for summary judgment before considering the motion for certification and that, moreover, doing so would

4

conserve resources. Dkt. 18. According to PBK, the "discovery conducted by the parties to date is more than sufficient for Plaintiff to address the arguments in PBK's Motion for Summary Judgment." Dkt. 18. PBK additionally points out that Yoakum did not file a motion for relief under Rule 56(f) of the Federal Rules of Civil Procedure and he has not alleged he cannot present facts sufficient to support his opposition. *Id.*

It is undisputed that discovery has been, to this point, limited to conditional certification issues. For conditional certification, courts generally "require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91, 123 S. Ct. 2148 (2003) (quotations and citations omitted). Yoakum's focus during discovery was on meeting that fairly lenient standard, not on obtaining enough evidence to survive a motion for summary judgment. Both parties should have sufficient time to fully develop their merits-based arguments before the court considers a motion for summary judgment—particularly when the outcome turns on factual nuances, as in this case. Accordingly, the court rules that the motion for summary judgment is premature and DENIES the motion, but the court will accept a renewed motion once the parties have had the opportunity to conduct merits-based discovery.[3]

### B.   Conditional Certification and Notice

*1.*   ***Legal Standard***.   Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) creates a cause of action against employers

---

[3] The court is not suggesting that PBK must wait until the close of discovery to file a renewed motion.

5

who violate the overtime compensation requirements. 29 U.S.C. § 216(b). Section 216(b) also permits an employee to bring suit against an employer on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Employees who wish to participate in a § 216(b) collective action must affirmatively "opt in" by filing with the court a written consent to become a party. *Id.* The "opt-in" procedure of § 216(b) illustrates its "fundamental, irreconcilable difference" from a class action under Federal Rule of Civil Procedure 23(c); in a Rule 23 proceeding, persons within the class description are automatically considered class members and must "opt out" of the suit if they do not wish to participate. *Lachappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should certify a class or grant notice in a § 216(b) action, most federal courts (including this court) have adopted the *Lusardi* test when deciding these issues. *See Mooney*, 54 F.3d at 1214 (discussing but declining to adopt the test applied in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)); *Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at *1-2 (S.D. Tex. Oct. 12, 2006). Under the *Lusardi* test, a district court approaches the question of whether the potential plaintiffs are "similarly situated" through a two-stage analysis. *Mooney*, 54 F.3d at 1213.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Badgett*, 2006 WL 2934265, at *1. At the notice stage, the court makes a decision, usually solely based on the pleadings and any submitted affidavits, whether to certify the class conditionally and give notice to potential class members. *See Mooney*, 54 F.3d at 1213. The decision is made using a "fairly lenient standard," because the court often has minimal evidence at this stage of the litigation. *Id.* at 1214. Courts, in fact, "appear to require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan. . ." *Id.*

(quoting *Sperling*, 118 F.R.D. at 407). Thus, notice stage analysis typically results in conditional certification of a representative class. *Badgett*, 2006 WL 2934265, at *1. After conditional certification, the "putative class members are given notice and the opportunity to 'opt-in.'" *Mooney*, 54 F.3d at 1214.

After notice issues, the action proceeds as a representative action. *See id.* The second stage of the *Lusardi* approach—the "decertification stage"—is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the action to proceed. *Id.*

The instant case is at the notice stage. While the notice stage standard is lenient, it is not automatic. *Badgett*, 2006 WL 2934265, at *2. The plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008) (referencing *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007), and *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007)). A court may deny conditional certification and notice "'if the action arises from circumstances purely personal to the

7

plaintiff, and not from any generally applicable rule, policy, or practice.'" *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). However, the court "'need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated.'" *Id.* (quoting *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007)). The "remedial nature of the FLSA and the purposes of Section 216 militate strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008).

### 2. *Conditional Certification Analysis*

The first and third steps of the conditional certification inquiry require the court to determine whether other aggrieved individuals exist who actually would like to opt in to the lawsuit. Yoakum alleges that he and 36 other CSRs who were employed by PBK since January 28, 2007 often worked more than 40 hours a week and were not paid overtime. Dkt. 16. He bases the number of representatives on discovery responses received from PBK. *See id.* Ferguson (Yoakum's supervisor) testified that the CSRs do the same thing and that PBK does not pay overtime to any of them. *Id.*, Exh. 4. This evidence, when viewed in light of the allegations regarding the duties of CSRs contained in the briefing, provides a reasonable basis for crediting Yoakum's assertion that other aggrieved individuals exist.

Yoakum's evidence relating to whether the other aggrieved individuals actually want to opt in to the lawsuit is sparse. Yoakum's declaration, which is attached to his motion for conditional certification, identifies two specific employees who he claims were not paid overtime, one of whom had signed an agreement with Yoakum's counsel to join the lawsuit but later decided not to join. Dkt. 16, Exhs. 1, 2. Another employee's wife allegedly contacted Yoakum's counsel expressing interest in the lawsuit. *See id.,* Exh. 2. Additionally, in his reply, Yoakum attached the notice of

consent to be a party plaintiff and declaration of William Matthew Murphy, a former CSR for PBK. Dkt. 22, Exh. 30. Since the employee Yoakum identified backed out and the employee whose wife expressed interest has not, on the record before the court, taken any affirmative action on his own, Murphy's consent is the only evidence Yoakum has presented indicating that other employees actually want to join this lawsuit. One consent is not enough. *See, e.g.*, *Ali v. Sugarland Petroleum*, No. 4:09-cv-0170, 2009 WL 5173508, at *4 (S.D. Tex. Dec. 22, 2009) (holding that, under the facts of that case, one affidavit was not enough to support conditional certification)*; Morales v. Thang Hung Corp.*, No. 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14, 2009) (declining to conditionally certify a class when the plaintiff's affidavit claimed there were three individuals who wished to join the suit but there was only one consent to join the collective action on file with the court); *Badgett,* 2006 WL 2934265, at *3 (not certifying the class when the three plaintiffs had only offered evidence of one additional employee potentially desiring to opt in). Thus, the court cannot conditionally certify the class on the current record.

Since Yoakum has not sufficiently shown that other employees desire to opt in to this lawsuit, it is unnecessary for the court to reach the arguments regarding whether the other CSRs are similarly situated.[4] The motion for conditional certification and notice is DENIED WITHOUT PREJUDICE.

### 3. *Contact Information of Other CSRs*

Yoakum claims that he was unable to find out if other employees would actually join the lawsuit because PBK refused to provide the names and addresses of the other CSRs that Yoakum requested in its interrogatories and document requests. *See* Dkt. 16 ("PBK has refused multiple

---

[4] It is likewise unnecessary for the court to rule on the evidentiary objections made by the parties relating to the similarly situated analysis.

9

requests to provide the names and addresses of the similarly situated employees, frustrating Mr. Yoakum's efforts to provide other declaration."). PBK refused to supply the names and addresses of its employees because it claims it has a duty to protect its employees' privacy, which it asserts "justifies withholding the contact information of current and former employees." Dkt. 23. PBK cites the Texas Disciplinary Rules of Professional Conduct Rule 7.03 and *Heckler v. DK Funding*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) to support this contention.[5] *See id.* Rule 7.03 involves prohibitions against certain types of attorney solicitation. The mere possibility that Yoakum's counsel may use the information garnered from his interrogatories and requests for production to violate Rule 7.03 does not justify PBK's failure to provide the information. *Cf. Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, 101 S. Ct. 2193 (1981) (The "mere possibility of abuses does not justify routine adoption of a communications ban . . . ."). Neither does *Heckler*, which is a case from the Northern District of Illinois. PBK cites the following language from *Heckler*: if "plaintiffs or their attorneys [were] to issue their own form of informal notice or to otherwise go out and solicit plaintiffs," it "would undermine a court's ability to provide potential plaintiffs with a fair and

---

[5] In its objections to Yoakum's interrogatories, PBK relies heavily on *Torres v. CSK Auto, Inc.*, No. EP-03-CA-113 (KC), 2003 WL 24330020, at *3 (W.D. Tex. Dec. 17, 2003). In *Torres*, the Western District of Texas granted a motion for conditional certification of an FLSA class, but, rather than requiring the defendant to disclose contact information to the plaintiff, the court required the defendant to send notice to its employees. *Torres* is distinguishable in that the plaintiffs in that case requested a computer-readable data file containing the names, addresses, social security numbers, and telephone numbers of potential plaintiffs; here, Yoakum requests only the names, addresses, and phone numbers of CSRs. *See Torres*, 2003 WL 24330020, at * 3. The other cases to which PBK cites to support its arguments relating to its concern with the privacy of its employees, *Aguilar v. Complete Landsculpture, Inc.*, *Humphries v. Stream International, Inc.*, and *Raddatz v. Standard Register Co.*, are also inapposite. In *Humphries* and *Aguilar*, the court, after granting motions for conditional certification and notice, required the defendants to provide names and addresses of the appropriate employees, but declined to require production of telephone numbers, and, in *Humphries*, declined the additional request for dates of birth and social security numbers. *See Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-cv-0776-D, 2004 WL 2293842, at *5 (N.D. Tex. Oct. 7, 2004); *Humphries v. Stream Int'l, Inc.*, No. 3:03-cv-1682-D, 2004 U.S. Dist. LEXIS 20465, at *12 (N.D. Tex. Feb. 13, 2004). In *Raddatz*, the plaintiff had requested production of "detailed personnel and salary information concerning more than one hundred of the Defendant's employees." *Raddatz v. Standard Register Co.*, 177 F.R.D. 446, 447 (D. Minn. 1997). The *Raddatz* court noted that "production of the [requested personnel] files in their entirety should not be ordered where the relevant information may be obtained by resort to less intrusive means of discovery." *Id.* at 448. So, the *Raddatz* court required only the production of the identities, ages at time of termination, dates of birth, addresses and phone numbers, reasons for termination, and salaries at the time of termination. *Id.*

10

accurate notice and would leave significant opportunity for misleading potential plaintiffs." *Heckler*, 502 F. Supp. 2d at 780.  PBK, however, leaves out the context of this statement.  The *Heckler* court was explaining why it believed courts should not require plaintiffs to show that there are other employees who want to join an FLSA collective action before the notice is sent.  *Heckler*, 502 F. Supp. 2d at 780.  The *Heckler* court decided against requiring the plaintiff to show that other employees wanted to join the action at the conditional certification stage.  *See id.*  As is evidenced in the discussion above, the courts in this district do require plaintiff to demonstrate that other employees desire to join the action, so the reasoning in *Heckler* does not help PBK's case.

While *Heckler* is not on point given this district's requirement that plaintiffs demonstrate that other potential plaintiffs actually desire to join the lawsuit before conditionally certifying an FLSA collective action, its reasoning that this requirement is "put[ting] the cart before the horse" is of concern.  How can a plaintiff show that others want to join the lawsuit before the plaintiff is given the opportunity to contact them?  While in many cases FLSA plaintiffs have worked side-by-side with other potential plaintiffs and thus have the ability to find out if there is any interest in the lawsuit, Yoakum and the other CSRs did not work with each other; they each worked at different construction sites.  So, Yoakum does not know the other CSRs and therefore cannot find out if they are interested in joining the lawsuit.  Without this information, he will be unable to make a sufficient showing under the third prong of the conditional certification standard in this district.  This result is contrary to the broad remedial nature of the FLSA.

While Yoakum has not filed a motion to compel discovery responses, the court notes that some courts have required precertification disclosure of contact information to "help [plaintiffs] demonstrate that a sufficient number of similarly situated plaintiffs exist to conditionally certify the action."  *Sedtal v. Genuine Parts Co.*, No. 08-Civ.-413, 2009 WL 2216593, at *7 (E.D. Tex. July 13,

11

2009); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09 Civ. 1148, 2010 WL 2362981, at *2 (S.D.N.Y. June 14, 2010) (collecting cases granting motions to compel precertification disclosure of contact information).  The court encourages the parties to meet and confer regarding Yoakum's discovery requests relating to the names, addresses, and phone numbers of the other CSRs in light of these authorities.  If the parties are unable to reach an agreement regarding the contact information, they should follow the procedures outlined in the court's procedures for discovery disputes.  If the dispute still cannot be resolved, the court will entertain a motion to compel.

### IV. CONCLUSION

Because discovery was limited to conditional certification issues, the court DENIES PBK's motion for summary judgment as premature.  The court also DENIES Yoakum's motion for conditional certification.  However, this denial is without prejudice to resubmission if Yoakum is later able to submit more persuasive information showing that other similarly situated employees want to join the litigation.  If Mr. Murphy still desires to join this litigation, he should file a motion for leave to join the action as an additional plaintiff.

Signed at Houston, Texas on October 14, 2010.

_____
Gray H. Miller
United States District Judge